**AFFIDAVIT OF SPECIAL AGENT THOMAS V. DICARLO**
**IN SUPPORT OF AN APPLICATION**
**FOR A CRIMINAL COMPLIANT**

I, Thomas V. DiCarlo, being duly sworn, depose and state the following:

**Agent Background**

1.      I am a Special Agent with the United States Postal Service (USPS), Office of Inspector General (OIG), and have been so employed since June 2008.  I am presently assigned to the Northeast Area Field Office of the USPS-OIG, located at 462 Washington Street, Woburn, MA 01801.

2.      As a Special Agent (SA) with the USPS-OIG, my responsibilities involve investigating criminal matters related to the Postal Service, Postal Service employees, and fraud waste and abuse of the mails.  For the past 5 years, I have been assigned to investigate Postal employees and external subjects who engaged in the abuse of U.S. Mail, including cases involving illegal substances being trafficked through the U.S. Mail.

3.      Since completing Criminal Investigator Training at the Federal Law Enforcement Training Center in Potomac, MD with the U.S. Postal Inspection Service in May 2008, I have successfully completed Mail Theft and Narcotic Training courses.  Since being assigned to this investigative area, I have conducted and participated in many investigations involving the theft, delay, destruction and obstruction of U.S. Mail, in addition to narcotic investigations involving Drug Trafficking Organizations (DTO).

4.      In addition, from 2006 through 2008, I held a Police Officer position with the Jacksonville Sheriff's Office (JSO) in Jacksonville, Florida.  As a Police Officer, I completed nine months of training at the accredited North Florida Law Enforcement Training Center in Jacksonville, FL and was assigned as a Patrolman in Zone 2 of Jacksonville city limits.

5. I have received specialized training in the investigation, identification and illegal distribution of controlled substances. This training included the recognition of various controlled substances. Additionally, I have received training and attended numerous seminars instructed by members of various local, state, and federal law enforcement agencies. Included in these courses among others were: surveillance courses, courtroom testimony courses, hidden vehicle compartment recognition courses, a money laundering course, as well as instruction and training in the weapons, methods and operations utilized by drug traffickers and other organized criminal enterprises. Additionally, I have worked with other experienced local, state, and federal narcotics investigators.

6. I have participated in various aspects of narcotics investigations including controlled purchases, undercover operations and court ordered electronic monitoring and surveillance. As a result of my experience, I am familiar with the vernacular, or code words and terms, which sellers and users of narcotics use.

## Purpose of Affidavit

7. I submit this affidavit in support of an application for a criminal complaint charging Shawn HERRON with Theft of Mail Matter By An Officer or Employee, in violation of 18 U.S.C. § 1709.

8. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this investigation, but includes only the information necessary to establish probable cause for the requested complaint.

**Probable Cause**

9. HERRON, age 44, has been with the Postal Service since September 17, 2005. HERRON lives in Whitman, MA. He is currently a Manager of Customer Services at the Fall River, MA Post Office. Prior to this position, he was the Supervisor of Customer Service at the Canton, MA Post Office.

10. Investigators believe HERRON has been profiling priority parcels from either Puerto Rico or west coast U.S. states, and removing them from the U.S Mail stream. The parcels in question have been flagged by law enforcement as potentially containing illegal narcotics. HERRON tracks the suspected parcels through Postal Service databases and monitors their arrival at the Fall River Post Office (FPO). HERRON then locates the parcels upon arrival on the work floor within the FPO and carries them to his personal office space, where investigators believe he steals the narcotics and stows them for personal use and possible distribution. These parcels then either disappear from the mail stream altogether or expected customers report them as never being delivered.

**Two missing parcels in September**

11. On September 18, 2019, I received notification from my co-agent on this matter, James Foley, Postal Inspector of the United States Postal Inspection Service (USPIS), that while reviewing inbound parcels from Puerto Rico to Fall River, he identified two missing parcels. The first was Priority Mail parcel 9505 5103 3666 9257 2104 10 from Dorado, PR to a specific apartment on Nashua St in Fall River, MA. The Product Tracking System (PTS) listed the parcel as "Arrival at Unit" on 9/16/19 at 7:23 a.m. at the FPO. However, even after two days, PTS did not show a "Delivered" scan for the parcel. Foley sent an email to HERRON, providing him the tracking number, and requested that HERRON provide information on this package. The second

package Foley identified was a Priority Mail Express piece EE308420418US (the Ash Street parcel) from Puerto Rico to another apartment on Ash Street in Fall River, MA. That parcel had been processed on 9/4/19 at a USPS facility in Providence, RI; however, the parcel was never scanned as "Arrival at Unit" in Fall River.

11. On September 30, 2019, the Postmaster (PM) of Fall River contacted agents in reference to the Ash Street parcel. The PM stated she found the parcel ripped open inside of a closet in HERRON's office. The PM informed Foley the closet is normally locked and only she and HERRON have keys to it. The PM took pictures of the package inside of the closet and left the package there. The PM provided the picture to investigators. The PM reported that HERRON had taken emergency leave and it was unknown when he would be back. HERRON's wife told USPS that he had checked into a substance abuse rehabilitation center.

**Two parcels from California reportedly returned to sender**

12. On October 21, 2019, Foley was contacted by HERRON about a customer issue. HERRON reported a customer was questioning a carrier about two parcels which were not delivered. The parcels were from California and addressed to an apartment on Grant Street in Fall River. The customer then called the FPO and told HERRON they were going to come to the Post Office to get their packages. HERRON informed Foley the parcels were no longer at the facility and were returned to sender on 10/17. Foley informed HERRON, he would head to the FPO to follow up.

13. Before leaving the FPO, Foley was able to identify two Priority Mail Packages 9505514208589288514874 and 9505514208589288514881 which were from San Francisco, CA to a Grant Street address. Both parcels had been scanned as "Addressee Unknown" on 10/17/19, however, there were no other scans after that. Had the packages left the facility, there would have

been a scan at the Providence Processing & Distribution Center (PDC) as well as the Post Office in California.

14. Foley arrived at the FPO and spoke with HERRON. Foley asked where the parcels in question were. He informed Foley the parcels were returned to sender the previous week. Foley told him there were no other scans on the packages after the "Addressee Unknown" scan. HERRON told Foley he personally took the parcels and placed them with the outgoing mail. A USPS manager's duties do not include personally handling such packages absent extenuating circumstances. Based upon my investigation, I believe that there is probable cause to believe that HERRON illegally diverted the parcels for his own use.

**Priority Mail Express from Puerto Rico never received by customer**

15. On Saturday November 2, 2019, Foley was contacted by a Fall River Supervisor (Supervisor I) about a Priority Mail Express parcel believed to have been intercepted for USPIS. Supervisor I informed Foley a customer had called to inquire about Priority Mail Express parcel EM095091772US from San Juan, Puerto Rico to an apartment on Everett Street. Supervisor I stated the parcel had been scanned as delivered, however the customer stated they did not receive the package. Supervisor I informed Foley she had spoken with the other Fall River Supervisor (Supervisor II), who informed her HERRON had the parcel on 10/30. Supervisor II stated HERRON said he believed the package had a brick of cocaine inside of it. Supervisor II inquired if the Inspection Service needed to be contacted to which HERRON informed him the Inspection Service only gets involved with larger scale cases. HERRON advised Supervisor II the package was going to be given to the carrier to be delivered.

16. Supervisor I identified the scanner used for the "Delivered" scan of Priority Express parcel EM095091772US. The scanner was assigned to the Flint Station Post Office in Fall River,

Ma and was logged on by an USPS clerk. Supervisor I spoke with the clerk who stated HERRON was at the facility on 10/30 and did in fact scan a package himself with that scanner.

17. Supervisor I sent a text message to HERRON to inform him the customer was looking for the above-mentioned parcel. HERRON told Supervisor I the package was delivered to the address and left by the mail box; however the customer reported that the parcel was never received. HERRON stated it was scanned by one of the old scanners. Supervisor I took a photo of the text message conversation and provided it to agents. I believe HERRON took this package.

**Express Mail Parcel from California**

18. On November 14, 2019, Supervisor I asked Foley if he had requested to have a packaged detained at the FPO. Foley informed Supervisor I he would check with his coworkers to ensure no one else made the request. Supervisor I informed Foley that HERRON had advised the supervisors of an inbound Priority Express package that needed to be pulled before it is scanned as arrived. Supervisor I sent me a picture of a PTS print out for Priority Mail Express EJ051324867US addressed to an apartment on Mulberry Street. Someone had written "Do not scan arrived" on the print out.

19. Supervisor I stated HERRON had taken the package to the retail window, ripped off the label and made the clerk scan the package as "Prepaid Acceptance." HERRON stated he was going to send the package to the Postal Inspectors. Foley reviewed the PTS information for Priority Mail Express EJ051324867US and on 11/14/19 at 12:28 p.m. the package was scanned "Accept or Pickup" at the FPO. This package never received another scan indicating it was delivered and I believe HERRON took this package.

**Oregon packages containing Hemp**

20. On November 20, 2019, Foley was contacted by HERRON about two packages from Oregon emitting a heavy odor of marijuana. The packages arrived from the Providence P&DC in a cardboard postal pack on which someone wrote "contraband.". HERRON stated the mailer continued to call about the packages stating that it is legal hemp and it is a mailable item. Foley informed HERRON he would do a little research on the regulations of mailing hemp and meet him at the FPO.

21. Foley arrived at the FPO and met with HERRON in his office. HERRON provided Foley with some paperwork that was attached to these two packages, as well as documentation provided by the sender. HERRON informed Foley the packages smelled like marijuana and that you could see the bags of marijuana inside. HERRON then brought Foley to the work room floor where the packages were. Foley noticed a strong odor of marijuana coming from the parcels. HERRON pointed Foley to multiple punctures in the packaging where you could see inside.

22. HERRON then informed Foley of four other identical packages which had arrived the previous week and which were addressed to the same recipient. HERRON stated that two men showed up with a box truck to pick them up. HERRON stated one of the males provided a Massachusetts ID. Foley then went upstairs to the PM in her office. While Foley was in the office, the sender called the PM and stated that the four parcels from the previous week were never delivered to his customer. The sender reported that HERRON told him the packages had been seized by the Postal Inspectors. The sender wanted to know why the packages were seized because they contained hemp, which is a mailable item. These packages were never seized by Postal Inspectors.

23. Foley then went back and spoke with HERRON and Foley informed him the sender had called and spoke with the PM about the parcels. Foley requested that HERRON provide a written statement of his involvement with these packages.

Later that afternoon, Foley spoke with Supervisor I about the packages. Supervisor I recalled the four missing packages which had arrived on November 15. The packages had been removed from the mail stream because they were believed to contain narcotics. HERRON later came to the supervisor area and stated the customer was there to pick up the packages. HERRON stated he spoke with Postal Inspectors who advised it was permissible to release the packages because they contained CBD oil. Postal Inspectors were not aware of these four packages at the time of their purported release to the customer. HERRON stated that he personally brought the boxes to the loading dock and released them to the individuals. The next day Supervisor I received a call from the mailer of the packages stating they were never delivered to his customer. I believe that HERRON had someone come to the PO to take the packages on his behalf as the actual recipient never received the packages.

**Puerto Rico Express found on HERRON's desk**

24. On November 27, 2019, the PM saw a Priority Mail Express Package from Puerto Rico on HERRON's desk and provided agents with information on the package. The package had been processed at the Providence P&DC, but was never scanned into the FPO.

25. Foley stated he arrived at the FPO and went into the manager's office. Foley stated he saw a brown package on the desk. Foley removed the piece of paper which was covering it and saw it was a Priority Mail Express parcel from Puerto Rico. Foley lifted the package and saw the bottom of the box had been opened. Foley took a picture documenting the opening and location of the package and that it had been tampered with, then returned it to its original position.

26. Foley went over to the supervisor's desk and spoke with Supervisor II, who asked Foley if he was here for the box he pulled this morning. Foley informed him he was unaware of what box he meant. Supervisor II stated that HERRON told him to pull a package from Puerto Rico and not to scan it as "Arrival at Unit". Supervisor II stated he removed the package from the mail stream that morning and brought it to HERRON. Supervisor II informed Foley he was under the impression that the package was being held for the Postal Inspectors. Supervisor II stated HERRON has asked him multiple times to pull packages before they are scanned. Most of those packages are from California and Puerto Rico.

27. On January 5, 2020, the OIG and USPIS installed several covert cameras around the outside hallways of HERRON's office in the FPO.

**Missing Puerto Rico Package**

28. On Monday January 6, 2020, Foley was advised by Supervisor I that HERRON had taken a Priority Mail parcel from Puerto Rico into his office. She provided tracking number 9505 5105 4733 0004 7879 91, which was addressed to an apartment on Branch Street. A review of surveillance video in the FPO showed HERRON on the workroom floor looking through packages and taking a Priority Mail package out of a push cart and onto the supervisor's desk. Shortly after, HERRON took the package and walked towards his office out of camera view. A review of the Product Tracking System shows the parcel was scanned as "Arrival at Unit" on 1/6/20 at 7:07a.m. but was never scanned as delivered.

29. On Tuesday January 7, 2020, Foley spoke with the PM, who informed Foley she saw a package on HERRON's desk that had been opened. Foley also spoke with Supervisor I, who stated HERRON had left the previous day carrying a bag. She stated she found it odd because she hardly ever saw him leaving with a bag.

30. On Thursday January 9, 2020, Foley went to the FPO and spoke to HERRON in his office. While in the office, Foley noticed on HERRON's desk a Priority Mail package that had been opened up on the bottom.

31. Supervisor I reported HERRON had taken two Priority Mail packages from Puerto Rico, 9505514657220007132543 and 9505514657220007132550, into his office. HERRON told Supervisor I if anyone called to inquire about the packages, to forward them to his office phone. A review of PTS showed the packages had been scanned "Held at Post Office at Customer Request". The packages were addressed to an apartment on Hartwell Street. Utilizing USPS databases, I was able to obtain images of the packages' address labels and confirmed that they were addressed to an apartment with a specific number on Hartwell Street. Later that afternoon, an inspector from USPIS placed a phone call to the FPO in the role of the recipient of the packages. Supervisor I forwarded the call to HERRON, who stated the packages were held because there was no apartment number listed on the packages. HERRON inquired as to what apartment number the packages were to be delivered to and the caller told him they should be addressed to apartment 406.

32. As previously mentioned above, on January 9, 2020, Foley went to the FPO and spoke with HERRON in his office. During the conversation Foley had with him, HERRON mentioned that numerous packages were going missing from his office. He also stated packages from Puerto Rico, California, and Colorado were showing up at the office with puncture holes in them. HERRON informed Foley that two packages from Puerto Rico arrived that day and looked like someone had poked holes in them to see the contents. Foley and HERRON walked to the work room floor where HERRON pointed out the two previously mentioned packages from Puerto Rico. HERRON pointed to an area on the packages where it looked like holes had been punctured

in the packages. When Foley looked at the label, he noticed the apartment number had been blacked out with marker, then "Apt 406" was written in black marker. This stood out because the images of the packages I obtained clearly showed they were addressed to apartment 406.

### Conclusion

Based on the foregoing, I have probable cause to believe that HERRON committed Theft of Mail Matter by an Officer or Employee in violation of Title18, United States Code, Section 1709.

The above information is true and correct to the best of my knowledge, information and belief.

_____
Thomas V. DiCarlo
Special Agent
U.S. Postal Service – Office of Inspector General

Sworn and subscribed to me
this 10th day of February 2020

_____
Honorable M. Page Kelley
United States Magistrate Judge